J-S92003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NEIL JOSEPH HARRIS, | |
| Appellant | No. 1658 WDA 2015 |

Appeal from the Judgment of Sentence September 22, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0010562-2009

BEFORE:  SHOGAN, MOULTON, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JANUARY 11, 2017**

Appellant, Neil Joseph Harris, appeals from the judgment of sentence entered on September 22, 2015, following the revocation of his probation. We affirm.

The facts of the underlying crimes, as summarized by the Commonwealth at Appellant's negotiated guilty plea hearing, are as follows:

> As to the case 200909663, had the Commonwealth proceeded to trial on that case, we would have called Officer Francis Capobianco, Officer Decenzo, Officer Fisher, and Officer Schweikarth, all of the East Pittsburgh Police Department or formerly [who] would have testified [that] on or about May 16, 2009, Officer Capobianco observed [Appellant] running and hiding behind buildings.
>
> Officers approached [Appellant] and asked him for his ID, being that he was in a housing area which was a privately owned

---

[*] Retired Senior Judge assigned to the Superior Court.

area. [Appellant] at that time provided what proved later to be a false name, DOB, and social security number.

At this time officers attempted to handcuff him for their safety while they determined whether or not ID was valid. While the handcuffs were on, [Appellant] knocked over Officer Capobianco and ran into the woods.

After a search using K9s and other methods, [Appellant] was not located. With that, the Commonwealth would rest as to that case.

As to CC 200910562, had the Commonwealth proceeded to trial on that case, [it] would have called Officers Douglas Butler, Gregory Woodhall, Frank Rosato and Officer Bill Churilla, all of the City of Pittsburgh Police Department, who would testify on or about June 2, 2009, while on patrol, officers observed [Appellant] in what appeared to be a hand to hand transaction for . . . suspected crack cocaine.

Officers approached [Appellant] and attempted to make an arrest at that time. [Appellant] then initiated contact with the officer, pushing Officer Rosato . . . . [A] long chase ensued down the side of an embankment onto the Boulevard of the Allies and then over a 10 or 15-foot wall onto the Parkway East. And then over another wall into a cement factory or corporation or some kind of company, and then proceeded to run into the Monongahela River where he was later recovered by River Rescue.

During the chase, Officer Woodhall was injured, I believe. With that the Commonwealth would have rested as to that case.

N.T., 5/18/11, at 8–10.

The trial court summarized the procedural history as follows:

On May 18, 2011, Appellant, Neil Harris, pled guilty to Escape and Simple Assault. This [c]ourt sentenced him to two years probation on the Escape count and a consecutive period of two years probation on the Simple Assault count, both to be served consecutive to an unrelated sentence at CC200909663, for which Appellant was incarcerated at the time. On June 11, 2013, this [c]ourt found Appellant to have violated probation and

resentenced him to two years probation on the Escape count and a consecutive period of two years probation on the Simple Assault count . . . . This [c]ourt again found Appellant to have violated probation on September 22, 2015. This time, the [c]ourt revoked probation and resentenced Appellant to one to two years of incarceration at each count run consecutively to each other and to an unrelated sentence at CC 201412162. Appellant's Post Sentence Motion was denied on October 7, 2015. Appellant filed a Notice of Appeal on October 22, 2015 and a Concise Statement of Errors Complained Of [on Appeal] on January 12, 2016.

Trial Court Opinion, 5/12/16, at 2–3 (footnote omitted).

Appellant raises the following single issue on appeal:

I. Whether the revocation sentences imposed at CC200910562, counts 4 and 5, were manifestly excessive, unreasonable, and an abuse of discretion where the trial court followed a stated predetermine[d] sentence and failed to consider the personal history, character and rehabilitative needs of Mr. Harris as required by 42 Pa.C.S.A § 9721(B) and 42 Pa.C.S.A. § 9725?

Appellant's Brief at 5.

Appellant argues that his sentence was excessive and that the sentencing court failed to consider his personal history, character, and rehabilitative needs. These issues are challenges to the discretionary aspects of Appellant's sentence. *Commonwealth v. Malovich*, 903 A.2d 1247 (Pa. Super. 2006); *Commonwealth v. Lutes*, 793 A.2d 949 (Pa. Super. 2002).

As this Court clarified in *Commonwealth v. Cartrette*, 83 A.3d 1030 (Pa. Super. 2013), our scope of review following the revocation of probation is not limited solely to determining the validity of the probation revocation

proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing. Rather, it also includes challenges to the discretionary aspects of the sentence imposed. Specifically, we unequivocally held that "this Court's scope of review in an appeal from a revocation sentencing includes discretionary sentencing challenges." *Id*. at 1034. Further, as we have long held, the imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. *Commonwealth v. Sierra*, 752 A.2d 910, 913 (Pa. Super. 2000).

It is well settled that there is no absolute right to appeal the discretionary aspects of a sentence. *Commonwealth v. Dawson*, 132 A.3d 996, 1005 (Pa. Super. 2015). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014) (*en banc*).

To effectuate this Court's jurisdiction when challenging the discretionary aspects of a sentence, Appellant must satisfy a four-part test by (1) preserving the issue in the court below, (2) filing a timely notice of appeal, (3) including a Pa.R.A.P. 2119(f) statement in his appellate brief, and (4) raising a substantial question for our review. *Commonwealth v. Spenny*, 128 A.3d 234, 241 (Pa. Super. 2015) (quoting *Commonwealth v.*

*Tejada*, 107 A.3d 788, 797 (Pa. Super. 2015), *appeal denied*, 119 A.3d 351 (Pa. 2015)).

Applying the four-part analysis to the instant case, we find that Appellant (1) preserved the issue; (2) timely filed his notice of appeal; and (3) complied with Pa.R.A.P. 2119(f) by including in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence. Appellant's Brief at 12–16. Acknowledging that "the determination of what constitutes a substantial question must be evaluated on a case-by-case basis," *Commonwealth v. Johnson*, 125 A.3d 822, 826 (Pa. Super. 2015), we note that this Court has held that an excessiveness claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question. *See*, *e.g.*, *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (within excessiveness claim, substantial question is raised when the appellant sufficiently articulates the manner in which the sentence violates either a specific provision of the Sentencing Code or a particular fundamental norm underlying the sentencing process). Therefore, we proceed to address the merits of Appellant's issue.

Appellant's argument in the body of his brief does not comport to his statement of the question presented, wherein he asserted that the trial court failed to consider his history, character, and rehabilitative needs. Appellant's Brief at 17. Instead, Appellant focuses on his assertion that the revocation

sentences "were predetermined at the original 2011 sentencing, and were invoked to the exclusion of all other factors." *Id*. Appellant suggests that the trial court's focus "was solely upon its repeated stated intention, as early as during the original May 18, 2011 sentencing hearing, that if [Appellant] 'violates my probation, then I'll max you out.'" *Id*. at 20. Thus, Appellant maintains that the trial court harbored a "predetermined intention" of an appropriate sentence in this case, rather than applying the individualized consideration required by the Sentencing Code.

Appellant specifically, after consultation with his attorney, chose to waive preparation of a presentence report. N.T., 9/22/15, at 11. Appellant's counsel told the trial court:

> MS. KOWALSKI: [T]he thing is he's been trying very, very hard, especially in light of having a new baby, to make a positive change in his life. Even though he's still being classified at this point in time, he has taken steps to get involved in a lot of different programming there.
>
> He's involved in violence prevention, thinking for a change, therapeutic community. He attends drug and alcohol groups and one of the reasons he did not want to risk a presentence investigation is he does want to go back and continue his other sentence and continue in the groups without losing much momentum or having to apply for them again.
>
> They also have been able to get a good handle on his mental health issues, which you may be aware of as well. He has the posttraumatic stress from many, many gunshot wounds, depression, racing thoughts, at this point in time the Remeron and Welbutrin is working and he believes they'll contribute to his success while he is completing his SCI sentence, as well.

Your Honor, we're asking for you to take that all into consideration and with the possibility of giving him a sentence that is concurrent with his --

THE COURT: Are there two sentences that are concurrent with each other?

MS. KOWALSKI: Excuse me.

THE COURT: Concurrent with his other two sentences that are running --

MS. KOWALSKI: -- running concurrent as well.

THE COURT: So on his second violation of probation on my case, with convicted violations that caused him to be serving concurrent state sentences, I should do him the favor of running a third sentence concurrent to those two. Is that what you're saying?

MS. KOWALSKI: That is what we are advocating for.

THE COURT: Because rewarding bad behavior is always a good idea.

MS. KOWALSKI: No, Your Honor. I believe he recognizes that and he recognizes he comes before you not in a good position, Your Honor.

Do you want to address this further?

[APPELLANT]: I know I'm totally responsible for my actions. There is no excuse for my lifestyle. What I was doing, I'm responsible. Right now, my life, I got a good supportive family and a couple good people surrounding me and supporting me that I'm trying everything in my power to do what I need to do and live a positive life. I want to pay my debt to society. There is no way around it.

I'm willing to do whatever needs to be done and whatever way this goes, I respect Your Honor's decision. I really am trying my hardest right now to change my life around, not just for myself, but my family, my community, my friends, everything. I'm really trying my hardest with everything I got.

THE COURT: Well, with that great support network, how did you manage to violate this probation a second time?

[APPELLANT]: Me and my family just started getting back together. My dad just came back from out of town. My woman, we just got back together. I was on bad terms with my family. I had nothing and that is my fault that I had nothing. But I have a lot of people supporting me right now and hanging in there with me giving me the support that I need. That is making me want to change and I'm trying everything, everything in my power. I really am.

THE COURT: Mr. Harris, you told me that before and I've given you two breaks on this case, even though you were a repeat felony offender with a 5 prior record score. I believed you and I did give you two chances.

N.T., 9/22/15, at 11–15.

Our review of the record reveals that the trial court possessed a multitude of information relevant to Appellant and considered all of the factors bearing upon Appellant's sentencing. Appellant and his counsel informed the trial court about mitigating factors. Appellant minimizes his continued violation of probation and focuses on his allegedly new-found support system. We reject Appellant's claim.

The trial court stated:

Appellant presented at his initial sentencing hearing on these charges as a repeat felony offender with a Prior Record Score of 5, the highest possible. (Transcript of Sentencing hearing of August 26, 2013, hereinafter ST at 15) Nevertheless, by the time he appeared before this [c]ourt on September 22, 2015, this [c]ourt had given Appellant two significant sentencing breaks, which were opportunities for Appellant to establish his ability to conform his behavior to the reasonable rules of society. Appellant admitted on September 22, 2015 that he "wasn't ready" on previous occasions, to take advantage of these

- 8 -

opportunities. *Id*. Despite fathering an 11 year old, a 1 year old, and a 6 month old child, Appellant admitted he lived for himself and acted selfishly. (ST 16) While Appellant's words may have swayed this [c]ourt in the past toward lenient sentences, his actions, including two additional convictions since his original plea, compelled this [c]ourt to incarcerate Appellant so that society may be protected from his criminal conduct and so that he may receive the treatment and rehabilitation he clearly requires. As Appellant has repeatedly ignored his need for rehabilitation and treatment, and his ongoing behavior demonstrates the community's need to be protected from him, this [c]ourt did not err in sentencing him to a sentence of confinement for a period of 2 to 4 years.

Trial Court Opinion, 5/12/16, at 5.

The court concluded that incarceration for the specified time was appropriate because Appellant's conduct indicated he was likely to continue on the path he had chosen over a period of years, despite the court's past grants of leniency. The record adequately supports the court's decision. Accordingly, there is no reason to disturb the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/11/2017

- 9 -